FELICIA R. REID (SBN 155481)
freid@chklawyers.com
KRISTIN L. OLIVEIRA (SBN 204384)
koliveira@chklawyers.com
ANN E. SOTER (SBN 229838)
asoter@chklawyers.com
CURIALE HIRSCHFELD KRAEMER LLP
727 Sansome Street
San Francisco, CA 94111
Telephone: (415) 835-9000
Facsimile: (415) 834-0443

Attorneys for Defendants
L-1 IDENTITY SOLUTIONS OPERATING
COMPANY, L-1 ENROLLMENT SERVICES
DIVISION

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY STOCKTON,<br><br>Plaintiff,<br><br>vs.<br><br>L-1 IDENTITY SOLUTIONS OPERATING COMPANY, a corporation doing business in the State of California, L-1 ENROLLMENT SERVICES DIVISION, an unknown entity doing business in the State of California, and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No. 2:10-at-1606 (Temporary)<br><br>**DECLARATION OF KRISTIN L. OLIVEIRA IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT UNDER 28 U.S.C. §§ 1332 AND 1441 [DIVERSITY JURISDICTION]**<br><br>[Placer County Superior Court Case No.: SCV 0028060]<br><br>Complaint Filed:   October 6, 2010 |

I, Kristin L. Oliveira, declare as follows:

1. I am an attorney admitted to practice in the State of California and before this Court. I am Of Counsel at the law firm of Curiale Hirschfeld Kraemer LLP, attorneys of record for Defendants L-1 Identity Solutions Operating Company and L-1 Enrollment Services Division ("Defendants"). I have personal knowledge of the facts stated herein and could testify competently to them if called upon to do so. I make this Declaration in support of Defendants' Notice of Removal to Federal Court, filed concurrently herewith.

2. A true and correct copy of the settlement demand sent by Plaintiff's attorney to Janet Southards of L-1 Enrollment Services Division, dated July 2, 2010, is attached hereto as **Exhibit A**.

3. On October 22, 2010, I spoke with Plaintiff's counsel, Kara Keister of the law firm of Bowman & Associates, APC. I asked Ms. Keister if she would stipulate that Plaintiff does not seek damages greater than $75,000 in her civil action. Ms. Keister declined to so stipulate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on this 4th day of November, 2010, in San Francisco, California.

/s/ Kristin L. Oliveira
Kristin L. Oliveira

# EXHIBIT

# A

**LAW OFFICE OF**
# Bowman
## & ASSOCIATES, APC

Sacramento Office
2151 River Plaza Drive,
Suite 105
Sacramento, CA 95833
(916) 923-2800
F: (916) 923-2828

Folsom Office
193 Blue Ravine Road,
Suite 180
Folsom, CA 95630
(916) 985-2600
F: (916) 985-2626

www.bowmanandassoc.com
contact@bowmanandassoc.com

Toll Free: (877) 923-2877

Robert C. Bowman Jr.

Kara Keister
Sean Gavin
David P. Foos
*Commissioner, Sacramento Superior Court, Retired*
Christopher Phillips
Jesse S. Atwal
Kevin Morrison
Tobin Dietrich
Tonya Hernandez
Dale Frankis
Tejvir Grewal
Kathlyn A. Rhodes
Kenric P. Torkelson
Cary Petersen
Susan Benson

July 2, 2010

*Sent via U.S. Mail*

Ms. Janet Southards
L-1 Enrollment Services
Human Resources
15 Century Blvd, Suite 500
Nashville, TN 37214

  Re: *Tracy Stockton; wrongful termination and FMLA retaliation*

Dear Ms. Janet Southards:

  This office has been retained to represent Ms. Tracy Stockton regarding her recent termination from L-1 Enrollment Services (hereinafter "L-1"). I have met with Ms. Stockton and this office has conducted an independent investigation into the circumstances surrounding her termination. Ms. Stockton has been informed and believes that she was wrongfully terminated, and the purpose of this letter is to establish Ms. Stockton's position regarding the circumstances of her termination and to provide a reasonable resolution to the situation.

  As you are aware, Ms. Stockton was hired by L-1 in August 2007. Since the inception of her employment, Ms. Stockton proved herself to be dedicated to the growth and success of L-1 and worked diligently to implement L-1's policies and procedures. Ms. Stockton received regular merit raises and positive performance reviews for her outstanding work, was routinely assigned more duties and employees to supervise, and was ultimately promoted to Senior Supervisor. Ms. Stockton was willing to work around the clock for L-1 and regularly answered telephone calls from employees late at night, on weekends, and in the early mornings. Throughout the course of her employment, Ms. Stockton never received a single verbal or written warning that she was lacking in any aspect of her job, until she was terminated.

  Unfortunately, in or about November 2009, Ms. Stockton's health began to suffer. Ms. Stockton experienced regular migraine headaches and pain in her neck and back, and it became evident to Ms. Stockton and her doctor that the stressful nature of her employment was aggravating her condition. Ms. Stockton officially notified her supervisor, Connie Nyers, that she would be taking a medical leave on April 8, 2010; however, Ms. Stockton's supervisors knew for some time prior to this date that Ms. Stockton was suffering from intense migraine pain.

  In fact, Ms. Stockton began to feel hostility from her supervisors as early as February 2010. On February 11, 2010, Ms. Stockton met with Ms. Nyers and another supervisor to review L-1's expectations for the rest of the year. Ms. Stockton was given

EMPLOYMENT LAW | FAMILY LAW | CRIMINAL LAW | IMMIGRATION LAW
BANKRUPTCY | CONTRACTS | WILLS & TRUSTS | PERSONAL INJURY


**Bowman**
& ASSOCIATES, APC
LAW OFFICE OF

July 2, 2010
Page 2 of 4

Robert C. Bowman Jr.

Kara Keister
Sean Gavin
David P. Foos
*Commissioner, Sacramento Superior Court, Retired*
Christopher Phillips
Jesse S. Atwal
Kevin Morrison
Tobin Dietrich
Tonya Hernandez
Dale Frankis
Tejvir Grewal
Kathlyn A. Rhodes
Kenric P. Torkelson
Cary Petersen

a document entitled "2010 Operational Goals" (hereinafter the "Document") and was asked to review and implement the listed expectations. At no time during the meeting was Ms. Stockton told that the 2010 operational *goals* were in actuality a performance evaluation and that failure to immediately meet all of the goals would result in her termination. Rather, based upon the positive feedback and evaluations she received for her work at L-1 and the nature of the goals set forth in the Document, Ms. Stockton reasonably believed that the "2010 Operational Goals" was yet another directive for her to implement throughout the rest of the year. While Ms. Stockton was aware that she would be reviewed within 30 days to track the progress of her implementation of the goals, she had been given no instructions indicating that she had to have completed all of the goals within those 30 days. Nevertheless, on March 19, 2010, Mr. Stockton received a 30 Day Performance Review in which she was negatively evaluated for not having met all of the goals set forth in the Document. Ms. Stockton refused to sign the Review because it was an inaccurate portrayal of her as an employee, and she wrote a rebuttal to the Review instead, providing explanations for the accusations against her.

Meanwhile, Ms. Stockton's health continued to decline as the relationship between her and her supervisors became further strained. On March 24, 2010, Ms. Stockton e-mailed Human Resources Representative, Janet Southards, with questions about how to properly request medical leave under the Family Medical Leave Act and asked for the necessary paperwork. On April 8, 2010, Ms. Stockton notified Ms. Nyers and the rest of her supervisors that she would be taking an extended medical leave beginning at the end of the business day on April 9, 2010 and that she was unsure how long the leave would last.

On April 9, 2010, Ms. Nyers notified Ms. Stockton that she reviewed Ms. Stockton's rebuttal to the Review and had decided to keep the negative evaluation of Ms. Stockton on file.

On April 15, 2010, Ms. Stockton submitted to L-1 her doctor-completed FMLA paperwork. Her doctor estimated that she would be out on leave from April 12, 2010 through August 8, 2010, and that she would require modified duties upon her return that consisted of limited sitting, driving and lifting. As Ms. Stockton's position required her to sit for much of the day, as well as to frequently make long drives to various open sites, such restrictions would have been quite a strain on L-1's resources. Ms. Stockton would also require regular follow ups with the doctor after her leave was done, and she was expected to have flare-ups that would require her to take time off in order to properly recover.

On June 15, 2010, Ms. Stockton received a letter from Ms. Nyers informing her that her position had been "modified" into three positions for the sake of efficiency and that since Ms. Stockton's position **no longer existed**, she should consider herself without a job. This was not the first time L-1 terminated an employee for taking a medical-related leave; in fact, Ms. Stockton has informed me of least two other employees who were terminated while they were out on medical leave or going to be terminated upon their return. L-1 has a pattern of retaliation against workers on leave.

| EMPLOYMENT LAW | FAMILY LAW | CRIMINAL LAW | IMMIGRATION LAW |
| BANKRUPTCY | CONTRACTS | WILLS & TRUSTS | PERSONAL INJURY |

LAW OFFICE OF
**Bowman & ASSOCIATES, APC**

July 2, 2010
Page 3 of 4

Robert C. Bowman Jr.

Kara Keister
Sean Gavin
David P. Foos
*Commissioner, Sacramento Superior Court, Retired*
Christopher Phillips
Jesse S. Atwal
Kevin Morrison
Tobin Dietrich
Tonya Hernandez
Dale Frankis
Tejvir Grewal
Kathlyn A. Rhodes
Kenric P. Torkelson
Cary Petersen

Ms. Stockton has been informed and believes that she has been wrongfully terminated and has experienced harassment and discrimination based upon her disability and/or perceived disability. The law of the State of California is controlling in this matter and California Constitution Article I, Section 8 and California Government Code sections 12900 and 12940 et seq. are in full force and effect and binding on L-1. These sections require L-1 to refrain from harassing, discriminating or retaliating against any employee on the basis of a number of categories, including but not limited to, disability, perceived disability and/or medical condition. Furthermore, California Government Code section 12940(m) requires the employer to make reasonable accommodations for the known physical disability of an employee.

L-1 terminated Ms. Stockton after signs of her intense migraines and other health-related conditions became apparent, and harassed her by falsely accusing her of poor performance and publishing a negative performance evaluation to her personnel file despite its untruthfulness. Moreover, instead of making reasonable accommodations for Ms. Stockton's disability, L-1 abruptly terminated her upon learning that she would be out on an extended leave.

In addition to wrongfully terminating her, Ms. Stockton believes that L-1 violated the Family Medical Leave Act by retaliating against her for taking a protected leave of absence. Though L-1 does not employ 50 employees within a 75 mile radius of its headquarters, a contract cause of action may exist if FMLA benefits are promised to an otherwise ineligible employee. *Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132, 1136-1137 (7th Cir. 2001). Ms. Stockton has such a cause of action by virtue of your assurances that she was eligible for FMLA benefits, including the distribution to and acceptance of her completed FMLA paperwork by L-1's Human Resources. Pursuant to 29 CFR § 825.220(a)(2), it is unlawful for an employer to retaliate against an employee for taking FMLA leave, and L-1's termination of Ms. Stockton's employment was an act of retaliation insofar as it directly followed Ms. Stockton's submission of her FMLA paperwork to her supervisor.

Further, California law holds that an employee cannot be terminated for an "unlawful reason or a purpose that contravenes fundamental public policy." *Gantt v. Sentry Insurance*, 1 Cal. 4th 1083, 1094 (1992). L-1's termination of Ms. Stockton based on her disability and/or perceived disability, and its retaliation against her for taking a protected medical leave, is a violation of California's public policy favoring integrity and employee safety in the workplace.

Lastly, Ms. Stockton has not been paid all of her wages upon termination. She has accrued 15.3 hours of paid time off (or "vacation time") which has yet to be paid to her. Labor Code section 203 provides for waiting time penalties of Ms. Stockton's daily rate of pay until tender of payment of these wages.

Pursuant to Labor Code section 1198.5, I am formally requesting the following:

1. Ms. Stockton's complete personnel file;

2. All documents purporting to describe or characterize the legal relationship between Ms. Stockton and L-1;



July 2, 2010
Page 4 of 4

Robert C. Bowman Jr.

Kara Keister
Sean Gavin
David P. Foos
*Commissioner, Sacramento Superior Court, Retired*
Christopher Phillips
Jesse S. Atwal
Kevin Morrison
Tobin Dietrich
Tonya Hernandez
Dale Frankis
Tejvir Grewal
Kathlyn A. Rhodes
Kenric P. Torkelson
Cary Petersen

3. All employee handbooks or polices or procedures relating to employee discipline, evaluations, attendance, work standards, demotion or termination, layoffs and leaves of absence;

4. All written documentation referring or relating to performance requirement regarding Ms. Stockton's position, including job description;

5. All internal standards or regulations of L-1 having any relation to Ms. Stockton or her job performance; and

6. All documentation referring or relating to Ms. Stockton's history with L-1, including those documents related to her termination.

All documentation relating to Ms. Stockton's employment with L-1 is evidence and potentially extremely relevant to the above-related issues. I would request that you destroy no document or tangible evidence relating to Ms. Stockton's employment, including electronic information and e-mail.

In order to settle Ms. Stockton's claims and thereby prevent the necessity of turning to a more formal and costly means of resolution, Ms. Stockton is willing to consider an equitable agreement. Ms. Stockton believes that a reasonable and equitable agreement would be **$120,000** (approximately two years' salary).

Ms. Stockton hopes to settle this matter in a prompt and amicable fashion; however, if the matter is not resolved via mutual agreement as noted above within **14 days** from the date of this letter, Ms. Stockton will have no alternative but to pursue all of her available legal remedies.

I am certain that we will be able to facilitate meaningful discussions in resolving this matter and am hopeful that you will not hesitate to contact me should you have any questions. I look forward to hearing from you.

Sincerely,

**LAW OFFICES OF BOWMAN & ASSOCIATES**
*A Professional Corporation*

**KARA KEISTER**
Attorney at Law

EMPLOYMENT LAW | FAMILY LAW | CRIMINAL LAW | IMMIGRATION LAW
BANKRUPTCY | CONTRACTS | WILLS &TRUSTS | PERSONAL INJURY



LAW OFFICE OF
**Bowman**
& ASSOCIATES, APC
2151 River Plaza Drive, Suite 105
Sacramento, CA 95833

Ms. Janet Southards
L-1 Enrollment Services
Human Resources
15 Century Blvd., Suite 500
Nashville, TN 37214

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

I, the undersigned, am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 727 Sansome Street, San Francisco, California 94111. On November 4, 2010, I served the following document(s) by the method indicated below:

**DECLARATION OF KRISTIN L. OLIVEIRA IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT UNDER 28 U.S.C. §§ 1332 AND 1441 [DIVERSITY JURISDICTION]**

☐ by transmitting **via facsimile** on this date from fax number (415) 834-0443 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 p.m. and was reported complete and without error. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal. R.Ct 2003(3).

☒ by placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the **United States mail** at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited in the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ by placing the document(s) listed above in a sealed envelope(s) and consigning it to an **express mail service** for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.

☐ by placing the document(s) listed above in a sealed envelope(s) and by causing **messenger delivery** of the envelope(s) to the person(s) at the address(es) set forth below. I am readily familiar with the business practice of my place of employment with respect to the collection and processing of correspondence, pleadings and notices for hand delivery. On November 4, 2010, I caused to be served via messenger the above-listed documents.

☐ by **personally delivering** the document(s) listed above to the person(s) at the address(es) set forth below.

*Attorneys for Plaintiff:*

Robert C. Bowman, Jr., Esq.
Kara Keister, Esq.
The Laws Office of Bowman And Associates
2151 River Plaza Drive, Suite 105
Sacramento, CA  95833
Telephone:    (916) 923-2800
Facsimile:    (916) 923-2828

PROOF OF SERVICE
CASE NO.: 2:10-at-1606 (Temporary)

4815-9922-5864

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on November 4, 2010, at San Francisco, California.

_____
Cheri J. McCaffrey

PROOF OF SERVICE
CASE NO.: 2:10-at-1606 (Temporary)

2